**Opinion issued April 21, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00419-CR**

———————————

**IRAN PEREZ-AYALA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1385361**

---

## MEMORANDUM OPINION

Appellant, Iran Perez-Ayala, pleaded guilty, without an agreed recommendation concerning punishment, to the first-degree felony offense of

aggravated robbery.[1]  The trial court assessed punishment at twenty-five years'

confinement.  In two issues, appellant contends that the trial court denied him due

process under the United States Constitution and due course of law under the

Texas Constitution when it stated at the sentencing hearing that community

supervision "is not appropriate" for appellant and thus failed to consider the full

range of punishment.

We affirm.

## Background

The State charged appellant with the offense of aggravated robbery.

Appellant pleaded guilty to the offense without an agreed recommendation as to

punishment, and the trial court ordered preparation of a presentence investigation

report ("PSI").

According to the PSI, Michael Sifuentes, the complainant, listed his vehicle

for sale on Craigslist, and appellant contacted him about potentially purchasing the

vehicle.  Appellant and another man met Sifuentes and a friend of his, and

appellant spoke with Sifuentes and then test-drove the vehicle.  During the course

of their meeting, appellant shot Sifuentes in the chest, and he and the man with him

fled the scene in Sifuentes' vehicle.  Two days later, Houston Police Department

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

2

officers discovered Sifuentes' completely burned vehicle in a pasture. Sifuentes' belongings had been stolen from the vehicle, as had the vehicle's rims.

In his interviews with the PSI writer, appellant at first minimized his involvement in the offense, stating that he passed the gun to his co-defendant who then shot Sifuentes, before admitting in a second interview that he was the one who shot Sifuentes. In a written statement contained in the PSI, appellant explained that he had been under the influence of drugs when he committed the offense, he stated that his girlfriend had given birth to their first child shortly before the preparation of the PSI, and he expressed remorse for his actions and his desire to be present in his daughter's life. The PSI also reflected that, while appellant had no juvenile criminal record, he did have a 2012 misdemeanor conviction for possession of marijuana, that he had begun drinking and using drugs when he was fifteen, and that he had quit school in the eleventh grade to work full time to assist his family.

At the sentencing hearing, the trial court indicated that it had reviewed the PSI along with letters written and submitted on appellant's behalf. During argument, defense counsel emphasized that, although appellant quit school, he did so in order to work and support his family and that he had received his GED. Defense counsel also argued that appellant had gotten "involved in a bad group of people" who provided appellant with the gun used in the offense, but he also

3

pointed out that appellant was remorseful and had taken responsibility for his actions.

> After argument, the trial court stated:
>
> You know, I read this PSI and you say how Javier influenced you[,] or Junior,[2] that may be true, but one thing I do know is he wasn't there and he didn't pull the trigger. You know?
>
> And you know, there are some circumstances that exist where just being remorseful and sorry that it happened just isn't enough. And there are varying degrees of culpability in aggravated robbery, you know. You have aggravated robbery where the guy is just a party and drives the car. You have the aggravated robbery where the guy has a gun, you know. You have the aggravated robbery where the guy threatens. Then you have the aggravated robbery where the person is shot in the chest for his car. And survives. Okay. So you have that end and then you have you are on this end of the aggravated robbery that we see. All right.
>
> So of course, of course probation isn't appropriate. It is not appropriate. All right. You are going to have to do time. The question is how much time do I give you for this offense. All right?

The trial court stated that appellant's "actions at the time and afterwards were pretty callous," noted that appellant had a prior misdemeanor conviction, and ultimately assessed punishment at twenty-five years' confinement. This appeal followed.

---

[2]     According to the PSI, a man named Javier, also referred to as "Junior," informed appellant that Sifuentes' vehicle was for sale and instructed appellant to rob Sifuentes.

**Failure to Consider Full Punishment Range**

In his first issue, appellant contends that the trial court denied him due process of law under the United States Constitution because it failed to consider the full range of punishment, as evidenced by the court's statement at the sentencing hearing that "of course probation isn't appropriate. . . . You are going to have to do time." In his second issue, he contends that the trial court's actions also denied him due course of law under the Texas Constitution. Appellant argues both of these issues together, and we likewise consider them together.

We review a sentence imposed by the trial court for an abuse of discretion. *Buerger v. State*, 60 S.W.3d 358, 363 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)). Generally, we will not disturb a sentence assessed within the proper statutory punishment range. *Id.*

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. Similarly, the Due Course of Law provision of the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Due process "requires a neutral and detached judicial officer who will

consider the full range of punishment and mitigating evidence." *Buerger*, 60 S.W.3d at 363–64. "[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process."[3] *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005). "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Trial court remarks during trial that "are critical, disapproving, or hostile to a party 'usually will not support a bias or partiality challenge, although they *may* do so if they reveal an opinion based on extrajudicial information.'" *Youkers v. State*, 400 S.W.3d 200, 208 (Tex. App.— Dallas 2013, pet. ref'd) (quoting *Gaal v. State*, 332 S.W.3d 448, 454 (Tex. Crim. App. 2011)) (emphasis in original).

Here, appellant argues that the trial court "arbitrarily precluded deferred adjudication as punishment at sentencing" and failed to consider community supervision as an available punishment option, even though appellant was eligible for such punishment. As evidence that the trial court determined his sentence

---

[3] The "right to be sentenced after consideration of the entire applicable range of punishment is a category-two *Marin* right," and, thus, the defendant does not procedurally default his claim if he fails to object on this basis at trial. *Grado v. State*, 445 S.W.3d 736, 743 (Tex. Crim. App. 2014); *see Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993) (defining "category two" rights as those that "the judge has an independent duty to implement" absent effective and express waiver by defendant), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). Appellant, therefore, did not procedurally default his claim on appeal by failing to object in the trial court to the court's alleged failure to consider the full range of punishment.

without considering the full punishment range, appellant points to the trial court's statement at the sentencing hearing that "of course probation isn't appropriate. It is not appropriate. . . . You are going to have to do time."

As the State argues, however, the trial court made this statement after indicating on the record that it had reviewed the PSI and the letters appellant had submitted on his behalf and after it had heard argument from both appellant and the State concerning the appropriate sentence. The PSI contained the facts relating to the commission of the offense, namely, that appellant met Sifuentes to discuss potentially purchasing Sifuentes' vehicle, that appellant shot Sifuentes in the chest during this meeting, that appellant fled the scene in Sifuentes' vehicle, and that appellant abandoned and burned Sifuentes' vehicle two days later. The PSI also contained summaries of two interviews with appellant, in which he denied in the first interview that he had shot Sifuentes and then admitted in the second interview that he had been the shooter. Appellant also gave a written statement, included in the PSI, in which he admitted that he shot Sifuentes while under the influence of drugs and expressed his remorse for his actions.

At the sentencing hearing, defense counsel argued that, due to mitigating circumstances, the trial court should impose community supervision. He pointed to appellant's strong family support system, the fact that appellant dropped out of

7

school to help support his family and subsequently obtained his GED, appellant's steady employment history, and appellant's young child.

The record thus reflects that, although the trial court stated that probation was not appropriate and that appellant would "have to do time," it did so only after reading the PSI and hearing argument from counsel. This is, therefore, not a situation in which the trial court imposed punishment without considering any evidence relating to the offense, refused to consider mitigating evidence, or imposed a predetermined punishment. *See, e.g.*, *Earley v. State*, 855 S.W.2d 260, 262–63 (Tex. App.—Corpus Christi 1993, pet. dism'd) (holding that trial court's statement at original plea hearing that "[i]f you foul up [on deferred adjudication], you're coming back before me and I'll tell you right now I'm probably going to give you the maximum" and statement at revocation hearing that "I would rather have seen you with a first-degree [felony], because I would like to give you life" indicated that court "had decided to revoke probation and wanted to assess a life sentence before [it] heard any evidence"); *Jefferson v. State*, 803 S.W.2d 470, 471–72 (Tex. App.—Dallas 1991, pet. ref'd) (holding that trial court violated due process when, at deferred adjudication hearing, it told defendant that it would impose maximum sentence if defendant violated conditions of probation because court failed "to consider the full range of punishment for the offense charged when [it] imposed a predetermined punishment period"). Instead, the trial court

8

considered the PSI and heard argument from counsel before stating that, given the facts of this case, community supervision was not an appropriate punishment. *See Brumit*, 206 S.W.3d at 645 (distinguishing *Earley* and *Jefferson* on several bases, including fact that trial court "heard extensive evidence" before pronouncing sentence); *Youkers*, 400 S.W.3d at 209 (noting, in holding that trial court's comments did not reflect that court failed to consider full range of punishment, that challenged comments occurred "only after hearing all of the evidence").

"In the absence of a clear showing to the contrary, we presume that the trial court was neutral and detached." *Buerger*, 60 S.W.3d at 364. The record here does not indicate either "partiality of the trial judge or that the judge imposed a predetermined sentence" such that the presumption of neutrality is defeated. *See Brumit*, 206 S.W.3d at 645; *see also Vick v. State*, 268 S.W.3d 859, 862 (Tex. App.—Texarkana 2008, pet. ref'd) ("[W]e believe the record suggests the trial court did consider the possibility of community supervision in this case. But the trial court further concluded community supervision was inappropriate given Vick's repeated recent failures to obey the laws of Texas."); *Jaenicke v. State*, 109 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("What the trial court's statement reflects is the court's attempt to assess a sentence proportionate to the seriousness of appellant's crime."). We conclude that, under the facts of this case, appellant has not demonstrated that the trial court arbitrarily refused to

9

consider community supervision before it assessed punishment at twenty-five years' confinement. We hold that the trial court did not deny appellant due process or due course of law in assessing his sentence.

We overrule appellant's first and second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).