COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| KEUNTE DMON LEWIS, | § | No. 08-14-00210-CR |
| Appellant, | § | Appeal from the |
| v. | § | 363rd Judicial District Court |
| THE STATE OF TEXAS, | § | of Dallas County, Texas |
| Appellee. | § | (TC# F-1261741-W) |
|  | § |  |

## **O P I N I O N**[1]

Keunte Dmon Lewis appeals the trial court's judgment revoking his deferred adjudication community supervision.   In four issues, he contends that the trial judge failed to pronounce his sentence in his presence (Issue One) and that the trial judge violated his constitutional rights to due process by failing to act as a neutral and detached magistrate at the revocation hearings (Issues Two, Three, and Four).   We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Lewis was indicted for burglary of a habitation, a second-degree felony.   *See* TEX.PENAL CODE ANN. § 30.02(a), (c)(2)(West 2011).   He waived his right to a jury trial, judicially confessed, and entered a negotiated guilty plea.   The trial court deferred adjudication of his guilt

---

[1] This case was transferred to this Court from the Fifth Court of Appeals pursuant to an order issued by the Supreme Court of Texas.   *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

and placed him on community supervision for five years.

Approximately three months later, the State moved to revoke Lewis's community supervision and adjudicate his guilt. At the hearing on the State's motion, the trial judge rebuked Lewis for failing to timely report to the community supervision office and for testing positive for marijuana. When she asked Lewis why he had not complied with the terms of community supervision, he told her that "time management" problems had prevented him from doing so. The trial judge was not amused, alluding to imprisonment as a cure for such problems:

> [TRIAL JUDGE]: I can help you with time management, because when you go to the penitentiary they tell you when to get up and whether to go to bed and whether to eat. You want me to help you with that?
>
> [LEWIS]: No, ma'am.
>
> .          .          .
>
> [TRIAL JUDGE]: You should be going to the penitentiary today, for about ten years, because I gave you this chance, and you thumbed your nose at the Court and at probation and at your community supervision officer and everybody else involved in this business. Do you understand that?
>
> [LEWIS]: Yes, ma'am.

But the trial judge did not imprison Lewis. Instead, she acceded to his entreaty for a second chance despite her misgivings about the wisdom of her decision. Nevertheless, she made it clear to Lewis that there would be no third chance.

Approximately three months thereafter, the State again moved to revoke Lewis's community supervision and adjudicate his guilt. At the hearing on the State's motion, Lewis entered a plea of true and testified in his defense. Although Lewis acknowledged that he had failed to report, to pay his fines, and to perform his community service, he requested that his term of community supervision be continued for various reasons, but mainly because "it looks worse on

2

paper than how it is." When defense counsel invited Lewis to convince the trial judge why she should continue his probation, the following colloquy transpired:

[LEWIS]: Honestly –

[TRIAL JUDGE]: No, I want you to look at the docket sheet, I want you to look at the notation I made the last time you were standing in front of me, and what I said to you.

[LEWIS]: Yes, ma'am.

[TRIAL JUDGE]: What does it say there?

[DEFENSE COUNSEL]: No second time.

[TRIAL JUDGE]: Uh-huh. And here you are.

[LEWIS]: Yes, ma'am.

[TRIAL JUDGE]: With the unmitigated gall to ask me to give you a second chance after I told you last time you appeared in front of me, which was your second chance, that I wouldn't be doing it again. Do you remember that?

[LEWIS]: Yes, ma'am.

[TRIAL JUDGE]: What makes you think I would change my mind about that?

[LEWIS]: Well, I was hoping you would for the simple fact that I really am -- I really was trying and I really am trying and I don't believe that I'm a person that's going to be keep coming back and forth to jail.

[TRIAL JUDGE]: Sir, you've been on probation seven months and you've been in front of me three times.

Lewis finished testifying by reading a letter listing the various reasons why his term of community supervision should be continued. The trial judge was not swayed. At the conclusion of the hearing, she made the following pronouncement:

All right. I find you guilty, punishment is assessed at six years in the penitentiary.

**PRONOUNCEMENT OF SENTENCE**

3

In his first issue, Lewis argues that the trial judge's assessment of punishment does not meet the statutory requirement that, in a felony proceeding, "sentence shall be pronounced in the defendant's presence." *See* TEX.CODE CRIM.PROC.ANN. art. 42.03, § 1(a)(West Supp. 2014).[2] We disagree.

Lewis asserts that the trial judge did not pronounce "sentence" in his presence because she did not orally order that his punishment be carried into execution in a manner prescribed by law, *e.g.*, "ordering that he be held by the Sheriff until transferred to a TDCJ receiving agent where he will be confined for the prescribed number of years." In making this assertion, Lewis relies on Article 42.02 of the Texas Code of Criminal Procedure, which defines "[t]he sentence" as "that part of the judgment . . . that orders that the punishment be carried into execution in the manner prescribed by law." TEX.CODE CRIM.PROC.ANN. art. 42.02 (West 2006). But "[t]he plain language [of Article 42.02] . . . indicates that a sentence is nothing more than the portion of the judgment setting out *the terms of punishment*." [Emphasis added]. *State v. Ross*, 953 S.W.2d 748, 750 (Tex.Crim.App. 1997). Thus, the "part of the defendant's sentence that must be pronounced by the trial court . . . concern[s] *the number of years to be served or the amount of the fine assessed*." [Emphasis added]. *Marshall v. State*, 860 S.W.2d 142, 143 (Tex.App.--Dallas 1993, no pet.).

The record clearly indicates that the trial judge orally pronounced Lewis's guilt and punishment—six years in the penitentiary—in his presence. By doing so, the trial judge

---

[2] In its entirety, Article 42.03, § 1(a) states:

> Sec. 1. (a) Except as provided in Article 42.14, sentence shall be pronounced in the defendant's presence.

TEX.CODE CRIM.PROC.ANN. art. 42.03, § 1(a)(West 2013). Article 42.14 permits the pronouncement of sentence in the absence of the defendant in a misdemeanor case. TEX.CODE CRIM.PROC.ANN. art. 42.14 (West Supp. 2014).

pronounced Lewis's sentence in his presence as required by Article 42.03. *See Keys v. State*, 340 S.W.3d 526, 527 n.2 (Tex.App.--Texarkana 2011, no pet.)(concluding that trial judge did not orally pronounce appellant's sentence in his presence because instead of orally pronouncing appellant's guilt and punishment, the trial judge merely read the jury's punishment verdict in open court and adjourned proceedings afterwards); *Frias v. State*, No. 03-12-00463-CR, 2014 WL 1362639, at *1 n.1 (Tex.App.--Austin Apr. 4, 2014, no pet.)(mem. op.)(concluding that trial judge did not orally pronounce appellant's sentence in his presence because instead of orally pronouncing appellant's guilty or the sentence assessed by the jury, the trial judge merely read the jury's punishment verdict in open court and, after the parties declined to poll the jury, remanded the appellant to the custody of the sheriff).

Oral pronouncement of the sentence in the presence of the defendant is necessary because "the imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex.Crim.App. 2002). Therefore, "it is the pronouncement of sentence that is the appealable event, and the written sentence or order simply memorializes it and should comport therewith." *Id*. (quoting *Coffey v. State*, 979 S.W.2d 326, 328 (Tex.Crim.App. 1998)). Here, Lewis does not assert that the punishment assessed was not pronounced in his presence at the revocation hearing, nor does he contend that he was deprived of the opportunity to challenge the punishment assessed. In addition, Lewis does not argue that he was prevented from filing a timely appeal because of the trial court's alleged failure to pronounce sentence. Furthermore, Lewis does not claim that the trial court erred in entering a different sentence on the written judgment from the sentence pronounced in his presence at revocation hearing. Nor could

he have made such a claim. The written judgment comports with the trial judge's oral pronouncement of sentence. It memorializes the term of Lewis's sentence—six years' imprisonment—and the date sentence was imposed—May 5, 2014, the date of the revocation hearing—and orders that sentence be executed.

Lewis's first issue is overruled.

## NEUTRAL AND DETACHED MAGISTRATE

In his three remaining issues, Lewis claims that the trial judge violated his "rights to due process/due course of law" because:

> During the hearings on the State's motions to adjudicate guilt, the trial court made numerous remarks evincing a clear bias in favor of imprisonment . . . refus[ed] to consider any sentence other than a term of years in prison . . . [and] predetermined the sentence to the extent a term of years in prison was the only option considered.

We disagree.[3]

### *Applicable Law*

Due process guarantees a criminal defendant the right to a hearing before a neutral and detached judge who will consider the full range of punishment and mitigating evidence. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 1759-60, 36 L.Ed.2d 656 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex.Crim.App. 2006). A judge violates due process by arbitrarily

---

[3] The State argues that Lewis waived appellate review of his complaints because he failed to object to the trial judge's comments at the revocation hearings. Lewis, on the other hand, contends that he was not required to object to the trial judge's comments to preserve his complaints for appellate review because the absence of a neutral and detached magistrate is systemic error not requiring objection at trial. *See Blue v. State*, 41 S.W.3d 129, 133 (Tex.Crim.App. 2000)(plurality)(holding fundamental error need not be preserved to be brought on appeal). Whether an objection to alleged bias of a trial judge is required to raise the issue on appeal is an open question. *See Brumit*, 206 S.W.3d at 644-45 (addressing the merits of this type of claim while expressly declining to decide whether an objection to an alleged failure to consider the entire punishment range is required to preserve the error on appeal); *Vick v. State*, 268 S.W.3d 859, 862 (Tex.App.--Texarkana 2008, pet. ref'd)(holding that a trial objection to allegedly biased statements by the trial judge is necessary to preserve error). Here, we follow *Brumit*'s lead by addressing the merits of Lewis's complaints on appeal.

refusing to consider the entire range of punishment or mitigating evidence in a particular case and, instead, imposing a predetermined punishment. *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex.Crim.App. 2005)(per curiam). Absent a clear showing of such bias, we will presume that the judge was neutral and detached. *Brumit*, 206 S.W.3d at 645.

### *Discussion*

Lewis has failed to show that the trial judge refused to consider all of the evidence at the revocation hearing and, instead, imposed a predetermined sentence. In support of his argument that the trial judge was not fair and impartial in assessing his punishment, Lewis directs our attention to the two colloquies highlighted above in our discussion of the facts. He contends that these colloquies reveal that the trial judge "had no intention of considering continuing [him] on probation or modifying that probation, but was fixed on assessing a term of years." Lewis relies on *Jefferson v. State*, 803 S.W.2d 470 (Tex.App.--Dallas 1991, pet. ref'd), and *Earley v. State*, 855 S.W.2d 260 (Tex.App.--Corpus Christi 1993), *pet. dism'd, improvidently granted*, 872 S.W.2d 758 (Tex.Crim.App. 1994), for the proposition that refusing to consider anything other than imprisonment in the event of revocation is akin to predetermining a sentence. Lewis's reliance on *Jefferson* and *Earley* is misplaced.

*Jefferson* and *Earley* stand for the proposition that a trial court violates a defendant's due process rights when it assesses punishment at revocation consistent with the punishment it has previously announced it would assess upon revocation, without considering any evidence that might have been adduced at the punishment hearing. In *Jefferson*, upon giving the defendant deferred adjudication, the trial judge "promised" the defendant that that he would receive a 20-year sentence, the maximum term for the offense charged, if he violated the terms of his probation, and

7

instructed the probation officer to make a record of it.  *Jefferson*, 803 S.W.2d at 471-72.  At the adjudication hearing, the only thing the trial judge did before sentencing the defendant to 20 years' confinement was note that the defendant was aware of its previous promise.  *Id*. at 471.  The probation officer also testified that the trial judge had done the same thing in at least "20 [to] 30" cases.  *Id*. at 472   The court of appeals reversed the conviction, concluding that the trial court prejudged the defendant and sentenced him according to a promised punishment term.  *Id*. at 472-73.  In *Earley*, upon granting probation to the defendant, the trial judge told him "if you foul up I want you to know that I'll probably set your punishment right at the top level of the punishment range, and I won't have any sympathy for you . . . ."  855 S.W.2d at 262.  When the defendant appeared before the trial judge at a hearing on the State's motion to revoke his probation, before any evidence was presented, the trial judge told the defendant "I am just upset that . . . you did a third-degree felony[;] I would rather have seen you with a first-degree, because I would like to give you life."  *Id.*  The trial judge then imposed the maximum punishment.  *Id.* The court of appeals reversed the defendant's conviction, concluding that the trial judge clearly indicated a desire to revoke probation and assess a maximum sentence before listening to the evidence.  *Id*. at 262-63.

Our case is distinguishable from *Jefferson* and *Earley*.  In those cases, the trial judge arbitrarily carried out its promise to sentence the defendant to a stated number of years in prison. Here, by contrast, the trial judge did not promise or otherwise bind itself to a predetermined punishment or to a stated number of years' imprisonment upon revocation.  Rather, the trial judge admonished Lewis at the first revocation hearing that he had one more chance to obey the conditions of supervision—mentioning the possibility of 10 years' imprisonment as a means of

8

motivating him—and reminded him at the second revocation hearing of her previous admonishment. And, unlike the trial judges in *Jefferson* and *Earley*, the trial judge in this case assessed the punishment she did after considering all the evidence before her. Lewis was given a full hearing in defense of the State's motion to proceed with adjudication. At that hearing, he testified in his own defense after pleading true to the allegations in the motion. Only after listening to Lewis's testimony did the trial judge assess punishment.

The trial judge was obviously not pleased that Lewis had been before her three times during the last seven months. Although Lewis requested that his community supervision be continued, the trial judge had no obligation to continue it. If a defendant violates the conditions of his deferred adjudication community supervision, the trial judge has the authority to assess the full range of punishment upon an adjudication of guilt. *Cabezas v. State*, 848 S.W.2d 693, 695 (Tex.Crim.App. 1993). The trial judge exercised her authority in assessing Lewis's punishment at six years' imprisonment, which is well within the range prescribed for a second-degree felony. *See* TEX.PENAL CODE ANN. § 12.33(a)(West 2011)(imprisonment for second degree felony ranges from not less than two to twenty years). Lewis's punishment is supported by the law, and it is fair based on his demonstrated inability to rehabilitate while on community supervision, even after given a second chance. Thus, we cannot conclude that the two colloquies cited by Lewis establish that the trial judge violated his constitutional right to due process by failing to consider all of the evidence or imposing a predetermined sentence in advance of the revocation hearing.

Lewis's second, third, and fourth issues are overruled.

**CONCLUSION**

The trial court's judgment is affirmed.

9

June 26, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)