**Jose GONZALES Petitioner,**

v.

**Gary JOHNSON, Director Texas Department of Criminal Justice, Institutional Division Respondent.**

No. 3–96–CV–3326–X.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 21, 1997.

K.S. "Gator" Dunn, Staff Attorney, Huntsville, TX, for Petitioner.

Tommy L. Skaggs, Assistant Attorney General, Austin, TX, for Respondent.

## JUDGMENT

KENDALL, District Judge.

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered,

It is ORDERED, ADJUDGED and DE-CREED that:

1. The application for writ of habeas corpus is granted unless petitioner is granted a new probation revocation hearing before a different judge within ninety days from the date of this judgment.

2. The Clerk shall transmit a true copy of this Judgment and the Order Adopting the Findings and Recommendation of the United States Magistrate Judge to all parties.

## FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

KAPLAN, United States Magistrate Judge.

This case has been referred to the United States magistrate judge pursuant to 28

U.S.C. § 636(b) and a standing order of reference from the district court. The findings and recommendation of the magistrate judge are as follows:

# I.

## PROCEDURAL BACKGROUND

This is a habeas case brought under 28 U.S.C. § 2254. Petitioner Jose Gonzales is an inmate in the Texas prison system. Respondent Gary Johnson is the Director of the Texas Department of Criminal Justice, Institutional Division.

Petitioner pled guilty to three counts of aggravated robbery. The trial court deferred an adjudication of guilt and placed petitioner on probation for five years. The court later revoked his probation and sentenced petitioner to life in prison. Petitioner appealed. The court of appeals affirmed in an unpublished opinion. *Gonzales v. State,* No. 05–88–01268–CR (Tex.App.—Dallas, September 14, 1989). Petitioner did not file a petition for discretionary review. However, he did file two applications for post-conviction relief in state court. The trial court made written findings and recommended that the applications be denied. The Texas Court of Criminal Appeals denied habeas relief without written orders. *Ex parte Gonzales,* No. 26,168–01 (Tex.Crim.App., April 20, 1994); *Ex parte Gonzales,* No. 26,168–02 (Tex.Crim.App., January 10, 1996). Petitioner then filed this action in federal court.

An evidentiary hearing was held on August 28, 1997. Petitioner appeared in person and through his counsel of record, K.S. "Gator" Dunn. Assistant Attorney General Tommy L. Skaggs appeared for respondent. The Court has considered the record, evidence, and arguments of counsel. The issues have been fully briefed by the parties and this matter is ripe for determination.

# II.

## ISSUE PRESENTED

In his sole ground for relief, petitioner contends that the trial judge predetermined his punishment for any future probation violations. He argues that this deprived him of the right to a probation revocation hearing before a "neutral and detached" judicial officer.

## A.

## STANDARD OF REVIEW

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub.L. 104–132, 110 Stat. 1214 (1996). A petitioner may not obtain relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A state court decision is not "contrary to clearly established federal law" unless a different result was dictated by existing Supreme Court precedent. *Drinkard v. Johnson,* 97 F.3d 751, 768–69 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997). A state fact finding is not "unreasonable" unless the petitioner can rebut the finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). An application of law to the facts is not "unreasonable" unless "[the] state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." *Carter v. Johnson,* 110 F.3d 1098, 1103 n. 4 (5th Cir.1997), *cert. granted, judgment vacated,* 118 S.Ct. 409, 139 L.Ed.2d 313 (1997); *Mata v. Johnson,* 99 F.3d 1261, 1267 (5th Cir.1996), *vacated in part on other grounds,* 105 F.3d 209 (1997).

## B.

## PREDETERMINED PUNISHMENT

Claims arising out of state court sentencing decisions generally do not implicate federal constitutional rights. *Haynes v. Butler,* 825 F.2d 921, 923 (5th Cir.1987). Indeed, trial courts have wide discretion in determining punishment. *Jones v. Estelle,*

622 F.2d 124, 126 (5th Cir.), *cert. denied,* 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980). A federal court may grant habeas relief only if the sentencing decision was wholly devoid of any discretion, amounted to an arbitrary and capricious abuse of discretion, or was caused by a legal error which deprived petitioner of his liberty. *Haynes,* 825 F.2d at 924.

■ Nevertheless, due process guarantees a defendant the right to a hearing before a "neutral and detached hearing body." *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). A "neutral and detached" decisionmaker does not prejudge evidence he has not yet seen. *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990). Thus, a defendant is entitled to a probation revocation hearing before a judicial officer who has not predetermined that probation should be revoked or that a particular punishment should be imposed. *Patterson,* 905 F.2d at 570.

### 1. *Evidence*

Petitioner was charged with three counts of aggravated robbery in 1986. He agreed to plead guilty to robbery in exchange for a ten-year sentence, probated for ten years, and 120 days in jail. (Tr–I 10; SF–Hearing 75). Judge Larry Baraka rejected the plea bargain. Instead, the judge offered petitioner deferred adjudication and no jail time. (SF–Hearing 76). Petitioner accepted this offer and was placed on deferred adjudication probation for five years. The probation file contains the following entry:

11–24–86 Judge Baraka deferred a finding of guilt & placed subject on probation for a period of 5 yrs in each cause matter. Judge Baraka warned subject that, *if probation was revoked, he would sentence subject to "life" & would object to any parole.*

(Habeas Petition, Ex. B) (emphasis added). Both parties agree that this notation is a fair summary of the comments made by the trial judge at the guilty plea hearing.

Petitioner subsequently violated the terms of his probation and the state filed a motion to proceed with an adjudication of guilt. (Tr–I 16). A probation revocation hearing was held on September 7, 1988. Petitioner admitted that: (1) he failed to report to his probation officer for three months; (2) he did not pay probation fees for nine months; and (3) he did not make installment payments on his fine for nine months. (SF–Revocation 4–6). Petitioner tried to explain that he did not have a job and could not make the required payments. (SF–Revocation 8–9). He said that the probation officer told him not to report if he did not have the money. (SF–Revocation 9). Judge Baraka interrupted this testimony several times. At one point, the judge sarcastically inquired, "Now who is tougher? Me or the probation officer since you listened to what she told you?" Petitioner did not respond. Instead, he testified that he had stayed out of trouble and promised to look for a job. (SF–Revocation 10). Petitioner asked the judge to put him back on probation or impose a minimum sentence. (SF–Revocation 10–11).

At the close of the evidence, Judge Baraka questioned petitioner:

THE COURT: When I put you on probation, what did I tell you that I was going to do with you?

THE DEFENDANT: Sentence me to the penitentiary.

THE COURT: *How much time did I tell you you were going to get?*

THE DEFENDANT: I don't remember.

THE COURT: You don't remember, so I know I didn't make an impact on you.

(SF–Revocation 14) (emphasis added). The judge revoked petitioner's probation and sentenced him to three consecutive life terms. (SF–Revocation 14–18).

This Court held an evidentiary hearing on August 28, 1997. The parties presented testimony from Gary Hunter, Domingo Garcia, Jose Stewart, and Judge Baraka. Hunter was the supervising probation officer for Criminal District Court No. 2. (SF–Hearing 8).[1] He testified that Judge Baraka routine-

---

1. The probation officer assigned to this case, Terry Jones, is now deceased. (SF–Hearing at

ly warned defendants about the consequences of violating their deferred adjudication probation. (SF–Hearing 9–10, 13). Sometimes the judge would "make a promise as to how many years he would give them if they violated any conditions of probation and their probation was revoked." (SF–Hearing 10). These "promises" were recorded by the probation officer and placed in the file. (SF–Hearing 10, 13). The judge typically asked the defendant and probation officer about these "promises" at any subsequent revocation hearing. (SF–Hearing 9). Hunter said that Judge Baraka usually followed through on any "promises" he made. (SF–Hearing 18).

Domingo Garcia was appointed to represent petitioner at trial. (SF–Hearing 72). Jose Stewart represented petitioner at the probation revocation hearing. (SF–Hearing 20). Both lawyers were familiar with Judge Baraka and practiced extensively in his court. (SF–Hearing 20–21, 73–74, 78). Garcia and Stewart testified that the judge typically threatened defendants with specific sentences if their deferred adjudication probation was revoked. (SF–Hearing 21–22, 73–74). These "promises" were noted in the file by a probation officer. (SF–Hearing 74). Garcia said that Judge Baraka told petitioner that "if he came back before him he was going to sentence him to life." (SF–Hearing 77). Both Garcia and Stewart acknowledged that Judge Baraka usually kept his promise to impose a specific sentence if a defendant violated his deferred adjudication probation. (SF–Hearing 22, 78).

Judge Larry Baraka also testified at the hearing. He admitted that he had a "common course of conduct" in deferred adjudication cases. (SF–Hearing 36). This included making "promises to [defendants] about what sentence they would obtain if they came back before [him]." (SF–Hearing 36). Judge Baraka explained that these "promises" were really threats designed "to frighten the person that I was dealing with." (SF–Hearing 8–9).

38). He insisted that he was a neutral and unbiased judge and did not predetermine petitioner's sentence. (SF–Hearing 38–39, 59).[2] The judge did not review the probation file and had no independent recollection of the sentence he promised. (SF–Hearing 54–55, 57, 63). However, he remembered that petitioner was charged with a violent offense and "would be the category of the person that I would threaten." (SF–Hearing 57). Judge Baraka said that "I knew this was a guy that I needed to ask the probation officer was this one of the guys I threatened." (SF–Hearing 57–58).

### 2. Discussion

A fundamental component of due process is the right to a hearing before an impartial decisionmaker who "does not prejudge the evidence and who cannot say, with . . . utter certainty . . . how he would assess evidence he has not yet seen." *Patterson,* 905 F.2d at 570, *citing Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). The record in this case clearly shows that Judge Baraka was not neutral, detached, or impartial.

The conduct of the trial judge was consistent with his custom and practice in other deferred adjudication cases. (SF–Hearing 9–10, 22, 36, 74). Judge Baraka told petitioner that he would receive a life sentence if he violated his probation. (Habeas Petition, Ex. B). This remark was made at the guilty plea hearing and noted in the probation file. (SF–Hearing 14, 77). The judge said that he generally remembered those defendants that he threatened with a particular sentence. (SF–Hearing 56). At the revocation hearing, he knew that petitioner was charged with a serious offense and asked the probation officer "was this one of the guys I threatened." (SF–Hearing 57–58). Judge Baraka interrupted petitioner's testimony and verbally taunted him with questions about his "toughness." (SF–Revocation 9–10). The judge even asked petitioner to remind him about the sentence he had promised to impose.

**2.** Judge Baraka candidly acknowledged that he predetermined punishment in one case. (SF–Hearing 37–38, 41). He admitted that he sentenced a defendant to life after his probation was revoked "simply because I said I was going to do it." (SF–Hearing 42). However, the judge maintained that this was an isolated incident early in his judicial career and has not been repeated since.

(SF–Revocation 14). These facts lead to the inescapable conclusion that the judge predetermined punishment in this case.[3]

■ The Court is mindful that the state court denied habeas relief on basically the same set of facts. In that proceeding, the judge found that petitioner "had a full opportunity to present evidence on his behalf and did testify in court." (Tr–III 59). The judge further noted that:

> [Petitioner] did not remember being promised any punishment. Unlike the cases cited by [petitioner], this is not a situation where the court asked the probation officer if he promised any particular punishment at the time of probation. While the probation officer may have had a notation in his file, the court did not refer to the probation officer at any time during the revocation hearing or sentencing. Further, there is nothing in the court file that indicates a set punishment was determined prior to the revocation hearing. The court assessed punishment in these cases after a full hearing on the matter.

(Tr–III 59). In order to obtain federal habeas relief, petitioner must prove that these findings are contrary to existing Supreme Court precedent or involve an unreasonable application of law to the facts. 28 U.S.C. § 2254(d); *Drinkard*, 97 F.3d at 768–69. The standard of proof is "clear and convincing evidence." 28 U.S.C. § 2254(d).

The Court finds that petitioner has satisfied his burden in this case. First, the state court findings conflict with the testimony presented at the evidentiary hearing. Judge Baraka originally said that he "did not refer to the probation officer at any time during the revocation hearing or sentencing." (Tr–III 59). However, he later testified that "I knew [petitioner] was a guy that I needed to ask the probation officer was this one of the guys I threatened." (SF–Hearing 57–58). The judge also found that "there is nothing in the court file that indicates a set punish-

ment was determined prior to the revocation hearing." (Tr–III 59). This statement is contradicted by the notation in the probation file that petitioner was promised a life sentence. (Habeas Petition, Ex. B).

■ Second, the trial judge emphasized that petitioner had "a full opportunity to present evidence on his behalf and did testify before the court." (Tr–III 59). However, due process requires that the judge actually *consider* the evidence presented at the revocation hearing. The record clearly indicates that this was not done.

Finally, the findings are inherently suspect because they were prepared by Judge Baraka. There is no reason to believe that a judge who predetermined punishment would be any less biased when the issue is revisited on collateral review.

The Court concludes that the state court decision is contrary to *Gagnon* and *Morrissey*. The trial court's application of these established precedents to the facts of this case "is so clearly incorrect that it would not be debatable among reasonable jurists." *Carter*, 110 F.3d at 1103 n. 4; *Mata*, 99 F.3d at 1267. Accordingly, petitioner is entitled to habeas relief.

## III.

### RECOMMENDATION

Petitioner was deprived of his right to a probation revocation hearing before a neutral and detached judicial officer. The application for writ of habeas corpus should be granted unless petitioner is afforded a new revocation hearing before a different judge.

October 23, 1997.

---

**3.** This is not the only case where Judge Baraka predetermined punishment prior to a probation revocation hearing. At least two state appellate courts and one federal district court have criticized the judge for his propensity to prejudge cases without listening to the evidence. *See, e.g.* *Earley v. State*, 855 S.W.2d 260, 263 (Tex.App.—Corpus Christi 1993, pet. dism'd); *Jefferson v. State*, 803 S.W.2d 470, 472 (Tex.App.—Dallas 1991, pet. ref'd); *Johnson v. Collins*, No. 3–93–CV–0972–R, op. at 7–8 (N.D.Tex., May 4, 1994) (Sanderson, M.J.).